**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 12-cv-00098-CMA-CBS

MARK A. HENSON, and
SUZANNE M. HENSON,

      Plaintiffs,

v.

BANK OF AMERICA, a National Association, and
CASTLE STAWIARSKI, LLC, a Colorado limited liability company

      Defendants.

---

## ORDER ON PENDING DISPOSITIVE MOTIONS

---

This matter is before the Court on Defendant Bank of America, N.A.'s Motion to Dismiss (Doc. # 34), filed on June 1, 2012, and Defendant Castle Stawiarski, LLC's Motion to Dismiss (Doc. # 43), filed on July 5, 2012. Plaintiffs Mark and Suzanne Henson filed their Response to Bank of America's Motion to Dismiss (Doc. # 40) on June 29, 2012, and a Response to Defendant Castle Stawiarski, LLC's Motion to Dismiss (Doc. # 49) on July 26, 2012. Defendants Bank of America and Castle Stawiarksi, LLC filed their reply briefs (Doc. ## 50 and 53) on July 30, 2012, and August 14, 2012, respectively.

# I. FACTUAL BACKGROUND

Mark and Suzanne Henson commenced this litigation on January 13, 2012, by filing a Complaint (Doc. # 1) against Defendant Bank of America, consisting of 18 pages, 139 numbered paragraphs and 14 claims for relief.  Plaintiffs' Second Amended Complaint (Doc. # 29) was filed on May 11, 2012, with claims against Defendants Bank of America and Castle Stawiarski.[1]  The Second Amended Complaint, which is the current operative pleading, includes 203 numbered paragraphs, 39 pages, and 12 claims for relief.

The parties do not dispute that on November 22, 2005, the Hensons borrowed $242,000 from Ryland Mortgage Company for the purchase of their primary residence. (*See* Doc. # 29, ¶ 6.)  This transaction was memorialized with a Note and separately executed Deed of Trust.  The Deed of Trust or "Security Instrument" denominated the Hensons as "borrower," Ryland Mortgage Company as "lender," and Mortgage Electronic Registration Systems, Inc. ("MERS"), as well as its successors and assigns, as "the beneficiary of this Security Instrument."[2]  At some point thereafter, Countrywide Home Loans Servicing, LP assumed the servicing rights on the Hensons' loan.  (*Id.,* ¶ 8.)  Plaintiffs concede that in 2009, Bank of America N.A. acquired Countrywide Home

---

[1]  Plaintiffs' First Amended Complaint had previously been stricken by the Court.  (*See* Doc. # 24.)

[2]  "MERS is a private electronic database that tracks the transfer of the beneficial interest in home loans.  'MERS was designed to avoid the need to record multiple transfers of the deed by serving as the nominal record holder of the deed on behalf of the original lender and any subsequent lender.'"  *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1197 n.1 (10th Cir. 2011).

Loans Servicing LP and changed the name of that entity to BAC Home Loans Servicing, L.P.  (*Id.,* ¶ 9.)

Under Colorado law, a promissory note is a negotiable instrument that is freely assignable.

> If an instrument is payable to bearer, it may be negotiated by transfer of possession alone.  "[E]vidence that the Note itself has been indorsed [*sic*] in blank and that the Defendant is the holder of that Note is sufficient evidence of the Defendant's interest in the Deed of Trust."  "Whether or not [the original lender] executed any separate assignment of the Deed of Trust to the Defendant is not relevant because proof that the Defendant is the holder of the Note is conclusive as to Defendant's interest in the Deed of Trust."
>
> Colorado law defines a "[h]older of an evidence of debt" as, among other things, "[t]he person in possession of a negotiable instrument evidencing a debt, which has been duly negotiated to such person or to bearer or indorsed [*sic*] in blank."

*Patrick v. Bank of New York Mellon*, No. 11-cv-01304, 2012 WL 934288, at *13-14 (D. Colo. Mar. 1, 2012) (unpublished) (internal citation omitted) (noting that the foreclosure process in Colorado does not require the holder of an evidence of debt to produce the original note or assignment or transfer documents from the original lender). *See also Utah Cnty. Recorder v. Lexington Mortg., Inc.*, No. 2:11-CV-528, 2012 WL 1188460, at *3 (D. Utah April 9, 2012) (unpublished) (recognizing the "well-settled principle that '[t]he transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter'" (citation omitted)).

By their own admission, the Hensons experienced financial difficulties and were unable to stay current on their mortgage, missing payments in April, May, June, and

July 2010.  (*See* Doc. # 29, ¶ 12.)  On July 15, 2010, BAC Home Loans Servicing filed a "Notice and Election of Demand to foreclose on the Hensons' residence" and "certified . . . to the Adams County Trustee that it was authorized to commence . . . foreclosure proceedings . . . because it was the 'current holder of the indebtedness.'"  (*Id.,* ¶¶ 13 and 15.)  Defendant Bank of America insists that the Notice of Election and Demand for Sale properly certified that BAC Home Loans Servicing was a "Holder of Evidence of Debt" as that term is defined in Colo. Rev. Stat. § 38-38-100.3(10).[3]

Faced with foreclosure, the Hensons initiated Chapter 13 bankruptcy proceedings on January 11, 2011.  (*Id.,* ¶ 16.)  In connection with that bankruptcy case, on April 25, 2011, BAC Home Loans Servicing filed a proof of claim attesting that "that the Note and Deed of Trust pertaining to the Plaintiffs' loan and residence were assigned to BAC on March 15, 2011," rather than on July 15, 2010, "as previously misrepresented to the Plaintiffs, the Adams County Public Trustee, and the Adams County District Court."  (*Id.,* ¶¶ 18 and 19.)  During a hearing held before Magistrate Judge Craig B. Shaffer on November 8, 2012, the Hensons' counsel conceded that this apparent discrepancy provides the factual predicate for all of the twelve claims for relief asserted in the Second Amended Complaint.  (*See* Doc. # 67 at 64.)

Plaintiffs' First Claim alleges that Defendants Bank of America and Castle Stawiarski, along with other entities and various individuals, "while employed by or

---

[3] "'Holder of an evidence of debt' means the person in actual possession of or person entitled to enforce an evidence of debt."  *See* Colo. Rev. Stat. § 38-18-100.3(10).

associated with an enterprise as defined in Colo. Rev. Stat. § 18-17-103(a), unlawfully, feloniously, and knowingly conducted or participated" in that enterprise or its operations through a pattern of racketeering activity, in violation of Colo. Rev. Stat. §§ 18-17-104(3) and 18-17-105.  The First Claim further alleges that the named defendants, "directly and in concert" with other entities and named individuals, "conspired, collaborated or jointly endeavored to engage in" twenty different predicate acts "related to the conduct of the foreclosure churning enterprise," including state law criminal violations for offering a false document for recording, forgery, criminal impersonation, and criminal possession of a forged instrument, as well as violations of the federal mail and wire fraud statutes.

The Second Claim alleges that Defendants Bank of America and Castle Stawiarski violated the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-715, by making a "false statement of fact on July 15, 2010 when it misrepresented to the Adams County Public Trustee and to the Hensons that it was the current holder of the indebtedness."  The Second Claim further contends that Defendants violated the CCPA "by publishing the Plaintiffs' full social security numbers on the Note which was attached to the Motion for Order Authorizing Sale on September 10, 2010 and filed as a public document on LexisNexis."

Plaintiffs' Third Claim is brought against Defendant Bank of America based upon an alleged violation of Colo. Rev. Stat. § 38-40-104.  Specifically, the Hensons allege that Bank of America failed to adequately respond to an inquiry sent on November 5, 2010, requesting information concerning payment dates, the purpose of payments, and

the receipt of all foreclosure fees and costs charged to the Hensons' accounts during the preceding two years, as well as copies of escrow statements for the past two years, an explanation of how those escrow fees were calculated, and a payment history for the past two years.  Plaintiffs contend that Bank of America failed to provide all the requested information or documentation.  For this Claim, Plaintiffs are seeking actual damages and statutory damages of $1,000.00, together with reasonable attorney fees and costs.

The Fourth, Sixth, Seventh, Tenth, Eleventh, and Twelfth Claims assert violations of the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-1617, based on Defendant Bank of America's alleged failure to properly respond to a series of qualified written requests for information submitted by the Hensons on January 11, February 17, March 30, April 13, and April 19, 2011.  For each of these claims, Plaintiffs are requesting statutory and/or actual damages, plus all reasonable attorneys fees and costs.

The Fifth and Eighth Claims are brought under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641(f), based upon Defendant Bank of America's alleged failure to properly respond to the Hensons' January 11 and February 17 requests for identification of the owner of their mortgage loan.  The Ninth Claim alleges that Defendant Bank of America violated TILA, 15 U.S.C. § 1641(g), by failing to provide the Hensons with timely written notice that Bank of America "purchasesd the Hensons' note and Deed of Trust from an entity named 'MERS' for the sum of $10.00 on March 15,

2011."  For each of their alleged TILA violations, Plaintiffs seek "maximum statutory

damages of $4,000.00 . . . plus all reasonable attorney fees and costs."

## II. <u>ANALYSIS</u>

Rule 12(b)(6) provides that a court may dismiss a complaint for "failure to state

a claim upon which relief can be granted."  *See* Fed. R. Civ. P. 12(b)(6).  In deciding

a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual

allegations . . . and view these allegations in the light most favorable to the plaintiff."

*Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United

States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  However, a plaintiff may not rely on

mere labels or conclusions, "and a formulaic recitation of the elements of a cause of

action will not do."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To withstand a motion to dismiss, a complaint must contain enough allegations of

fact "to state a claim to relief that is plausible on its face."  *Id.*  As the Tenth Circuit

explained in *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir.

2007), "the mere metaphysical possibility that *some* plaintiff could prove *some* set of

facts in support of the pleaded claims is insufficient; the complaint must give the court

reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual

support for *these* claims."  "The burden is on the plaintiff to frame 'a complaint with

enough factual matter (taken as true) to suggest' that he or she is entitled to relief."

*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 555

U.S. at 556).  The purpose of this pleading requirement is two-fold: "to ensure that a

defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense, and to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (citation and internal quotation marks omitted).  The ultimate duty of the Court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

Generally, a court considers only the contents of the complaint when ruling on a Rule 12(b)(6) motion.  *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).  Exceptions to this general rule include: documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes their authenticity; and "matters of which a court may take judicial notice." *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). *Cf. Gilbert v. Bank of Am. Corp.*, No. 1:11-cv-00272, 2012 WL 4470897, at *2 (D. Idaho Sept. 26, 2012) (unpublished) (noting that a court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming a motion to dismiss into a motion for summary judgment).  If a plaintiff does not incorporate by reference or attach a document to its complaint, a defendant may submit an undisputably authentic copy which may be considered in ruling on a

motion to dimsiss.  *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1281, 1384 (10th Cir. 1997).

Defendant Bank of America has offered 21 exhibits in support of its motion to dismiss, while Defendant Castle Stawiarksi, LLC has appended nine exhibits to its motion and reply.  Plaintiffs have offered two exhibits.  The Hensons, in their response, challenged the authenticity of Exhibits 1, 2, 6, 17, 18, and 21 offered by Bank of America.  However, during the November 8, 2012 hearing before Magistrate Judge Shaffer, Plaintiffs' counsel withdraw his clients' objection to all of Defendant Bank of America's exhibits, save for Exhibit 2, which the Hensons continue to challenge on authenticity grounds.  Subject to that single exception, the court may consider all of the proffered exhibits without converting the pending motions into motions for summary judgment.  *See Pacheco*, 627 F.3d at 1186.

## A.   PLAINTIFFS' FIRST CLAIM – COCCA

The Hensons assert that from January 25, 2007, to the present, Defendants Bank of America and Castle Stawiarski, LLC either directly or indirectly "conducted or participated in" a "foreclosure churning enterprise" "through a pattern of racketeering activity" in violation of § 18-17-104(3) of the Colorado Organized Crime Control Act ("COCCA").  The First Claim further alleges that Defendants, along with ten other specifically named entities or individuals (plus "others known and unknown"), "knowingly conspired or otherwise collaboratively endeavored to conduct or participate in" the "foreclosure churning enterprise" through a pattern of racketeering activity in violation

9

of § 18-17-104(4).  Plaintiffs allege that Defendant Bank of America "functioned as the

leader or principal of the 'foreclosure churning enterprise' by hiring, overseeing, and

compensating the other members of the enterprise for their services in connection with

the unlawful operations," and that Defendant Castle Stawiarksi, LLC's role in the

enterprise was as the main Colorado law firm that assisted Bank of America "and other

banks in accomplishing its unlawful and fraudulent foreclosures."

To properly allege a COCCA claim, Plaintiffs must plead that Bank of America

and Castle Stawiarski, LLC plausibly participated in the affairs of an "enterprise"[4]

through a pattern of two or more instances of racketeering activity.  *See L-3 Commc'ns*

*Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F. Supp. 2d 1066, 1076 (D. Colo. 2012) (citing

*Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010)).  The Colorado statute defines

"pattern of racketeering activity" to mean "engaging in at least two acts of racketeering

activity which are related to the conduct of the enterprise, if at least one of such acts

---

[4] The Colorado statute broadly defines the term "enterprise" to include "any individual . . . partnership, corporation, . . . or other legal entity, or any . . . association, or group of individuals associated in fact although not a legal entity."  Colo. Rev. Stat. § 18-17-103(2).  *See also Seidl v. Greentree Mortg. Co.*, 30 F. Supp. 2d 1292, 1305 (D. Colo. 1998) ("To allege an enterprise within the meaning of RICO, there must be a group of persons associated together for a common purpose of engaging in a course of conduct . . . . [It is] proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.") (internal quotation marks and citation omitted).  Defendant Castle Stawiarski has challenged the legal and factual sufficiency of Plaintiffs' allegations with respect to the COCCA "enterprise," as well as Castle Stawiarski's alleged participation in conduct of the enterprise.  The Court need not reach those questions given the other pleading deficiencies in Claim One.  *But see Campbell v. Bank of New York Trust Co., N.A.*, No. 11 Civ. 1588, 2012 WL 2952852, at *12 (S.D.N.Y. May 8, 2012) (unpublished) (holding that the plaintiffs' conclusory allegations were insufficient to establish that the defendants "functioned as a unit" or that the enterprise was separate and distinct from the fraudulent scheme in which the defendants allegedly engaged).

occurred in this state after July 1, 1981, and if the last of such acts occurred within ten years . . . after a prior act of racketeering activity." Colo. Rev. Stat. § 18-17-103(3). *See also People v. Chaussee*, 880 P.2d 749, 758 (Colo. 1994) (setting forth general rule that predicate acts in a pattern of racketeering activity must "protect the integrity of the ongoing enterprise" and be "related to the conduct of the enterprise").

A common thread among the predicate acts pled in this case is the concept of fraud.  It is well-established that if the predicates acts underlying a COCCA claim are fraudulent acts, the circumstances must be pled with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure and the Colorado Rules of Civil Procedure. *See, e.g.*, *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F. Supp. 2d. at 1076; *New Crawford Valley, Ltd. v. Benedict*, 877 P.2d 1363, 1371 (Colo. App. 1993).  As the Tenth Circuit has acknowledged,

> [T]he threat of treble damages and injury to reputation which attend RICO actions justify requiring plaintiff to frame its pleadings in such a way that will give the defendant, and the trial court, clear notice of the factual basis of the predicate acts. We believe this is particularly important in cases where the predicate fraud allegations provide the only link to federal jurisdiction. Thus, we hold that Rule 9(b) requires particularity in pleading RICO mail and wire fraud.

*Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir. 1989).[5]  *See also Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006) (noting that "[t]he

---

[5] *Cf. Saine v. A.I.A. Inc.*, 582 F. Supp. 1299, 1306 n.5 (D. Colo. 1984) ("Fraud claims also offer the claimant an extra negotiating point that may help force a settlement.  [. . .] [A] charge of fraud is a serious matter with attendant consequences to a person's reputation and good will.  No one should be subject to such harm unless the accuser makes specific allegations.") (internal citations omitted).

particularity requirement of Rule 9(b) . . .  applies to claims of mail and wire fraud" pled

as predicate acts in a RICO claim (internal citations omitted)).

Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n all averments

of fraud or mistake, the circumstances constituting fraud or mistake shall be stated

with particularity."  To meet the Rule 9(b) standard, a plaintiff must identify the

circumstances constituting the fraud.  *Broadview Fin., Inc. v. Entech Mgmt. Servs.*

*Corp.*, 859 F. Supp. 444, 449 (D. Colo. 1994) (citation omitted).  So for example,

where mail or wire fraud is alleged as a predicate act, "the plaintiff must specify the

time, place, and content of the alleged false representation and describe with

particularity any allegedly fraudulent transaction, and how the particular mailing or

transactions furthered the fraudulent scheme."  *Weizmann v. Kirkland & Ellis*, 732

F.Supp. 1540, 1546 (D.Colo. 1990).  *See also Kaiser v. Bowlen*, 181 F. Supp. 2d 1200,

1203 (D. Colo. 2002) ("The complaint must contain allegations of the specific

representations alleged to be fraudulent, where and when the statements were made,

the particular defendant making the misrepresentations, and what was false about

them." (citation omitted))*; Brooks v. Bank of Boulder*, 891 F. Supp. 1469, 1476 (D. Colo.

1995) (in pleading a claim under RICO, plaintiffs "must set forth the time, place and

contents of the false representation, the identity of the party making the false statement

and the consequences thereof" (internal quotation marks and citation omitted)).

Plaintiffs' First Claim does not satisfy the pleading requirements enunciated in

*Twombly*, *Iqbal*, and their progeny, or the particularity requirement imposed by Rule

12

9(b).  While the First Claim seeks to cast a wide net, Plaintiffs' allegations are best described as assumptions or conclusory statements; what is missing from the First Claim are sufficient facts to elevate the COCCA allegations above the level of mere speculation.  Some examples from the Hensons' Second Amended Complaint illustrate these pleading deficiencies.  The Second Amended Complaint asserts that Defendant Castle Stawiarski participated in an "unlawful and otherwise prohibited exclusive 'attorney network,'" and agreed to "'kick back' a percentage of its accordingly 'earned' attorney fees to LPS for referring cases to them."  (*See* Doc. # 29, ¶¶ 28 and 29.) Plaintiffs offer no factual support for these statements.  The Hensons contend that Bank of America functioned as "the leader or principal" of a "'foreclosure churning enterprise' by hiring, overseeing, and compensating other members of the enterprise."  (*Id.,* ¶ 25.) The First Claim then alleges conduct attributable to various individuals or entities. There are no facts alleged, however, that plausibly demonstrate that these individuals or entities were acting at Bank of American's direction or that would demonstrate in what way Bank of America functioned as a "leader."  Indeed, the Second Amended Complaint simply suggests "on information and belief" that "Bank of America entered into one or more unlawful agreements with LPS and/or DocX to 'manage or process' its foreclosures."  There is no indication as to when these "agreements" took place or in what manner these agreements were "unlawful."  *Cf. Zacharias v. JP Morgan Chase Bank, N.A.*, No. 12-06525, 2013 WL 588757, at *3 (N.D. Cal. Feb. 13, 2013) (unpublished) (holding that the plaintiff's RICO claim, which alleged that "Defendants

13

intentionally participated in a scheme to defraud *everyone*" by sending fraudulent affidavits, assignments, and pleadings in foreclosure cases, was "far from plausible"); *Souders v. Bank of Am.*, No. 1:CV-12-1074, 2012 WL 7009007, at *13  (M.D. Pa. Dec. 6, 2012) (unpublished) (concluding that "Plaintiff's RICO claims against Defendants are vague and based on legal conclusions, completely failing to assert with factual sufficiency any particular conduct that would indicate Defendants were engaged in predicate acts of racketeering" (internal citations omitted)).

The Second Amended Complaint attributes certain fraudulent conduct to Ralph Flores and Miguel Romero, who are described as Bank of America employees.[6]  (*See* Doc. # 29, ¶¶ 34 and 35.)  Unfortunately, the allegations referencing Mr. Flores and Mr. Romero are more confusing than illuminating.  For example, the Second Amended Complaint alleges that "Ralph Flores . . . regularly forges mortgage assignments for [Bank of America's] residential foreclosure proceedings in Colorado" and that "'Ralph Flores' forged an assignment of Deed of Trust relating to Claudia Zuniga's mortgage loan" on September 21, 2011.  (*Id.,* ¶¶ 34 and 48.)  Later in the same claim, however, the Hensons allege that "[o]n November 23, 2011, John Doe #1 pretended to be Ralph Flores . . . and signed an 'assignment.'" (*Id.,* ¶ 51.)  Plaintiffs also contend that on various unspecified dates, "Flores . . . allowed other [unspecified] Bank of America employees to sign his name as a 'surrogate signer.'" (*Id.,* ¶ 52.)  Yet, in paragraph 33

---

[6]   Elsewhere in the Second Amended Complaint, Mr. Flores and Mr. Romero are described as "agents and employees" of RP Holdings Group LLC, Lender Processing Services, Inc., DocX, Inc., and Mortgage Electronic Registrations Systems, Inc.  (*See* Doc. # 29, ¶ 5.)

of the Second Amended Complaint, the Hensons state that "John Does #1-10 were employees of DocX who . . . admittedly forged documents pretending to be Vice Presidents of Bank of America and other banks."

The allegations involving Mr. Romero are even more amorphous.  The Second Amended Complaint specifically alleges that Mr. Romero "unlawfully, feloniously, and knowingly conducted or participated" in the alleged racketeering activity and that "Miguel Romero . . . regularly forges mortgage assignments for [Bank of America's] residential foreclosure proceedings in Colorado."  (*Id.,* ¶¶ 21 and 35.)  Yet apart from these sweeping conclusory statements, the only "fact" set forth in the Second Amended Complaint is that Mr. Romero's name was "falsely signed" by someone else.  (*Id.,* ¶ 55.) There are no facts alleged in the Second Amended Complaint that would plausibly demonstrate that Mr. Romero "knowingly" participated in any fraudulent activity.

Defendant Castle Stawiarski, LLC allegedly committed the first predicate act in violation of Colo. Rev. Stat. § 18-5-114, by filing on July 15, 2010, a Notice and Election that "contained a material falsehood (i.e., that [Bank of America] was the holder of the indebtedness on July 15, 2010)."  (*Id.,* ¶ 38.)  In fact, the record more accurately shows that a representative of Castle Stawiarski, LLC represented that Bank of America was a "holder of evidence of debt."  That was a factually correct statement, as the Hensons agree they were in arrears on their mortgage payments by July 1, 2010, and that Bank of America had assumed responsibility for servicing their home loan following its acquisition of Countrywide.  To state a valid claim under Colo. Rev. Stat. § 38-38-102,

Plaintiffs must come forward with facts that plausibly demonstrate that Defendant Stawiarski submitted for recording an instrument that contained "a material false statement or material false information" and did so "with intent to defraud." Plaintiffs' first predicate act fails to satisfy this pleading threshold.

The second predicate act, which also alleges a violation of Colo. Rev. Stat. § 18-5-114, is equally deficient. This predicate act contends that on September 10, 2010, Defendant Castle Stawiarski filed a false statement with the Adams County District Court in which it certified, in part, that Bank of America was the holder of the original evidence of debt as of September 10, 2010, and that Bank of America was the beneficiary of the Deed of Trust. Based upon documents appended to the parties' briefs, these statements were factually correct as of September 10, 2010. Plaintiffs argue, however, that the September 10, 2010 filing was false in light of Bank of America's subsequent proof of claim in the United States Bankruptcy Court, which included an"Assignment of Deed of Trust" dated March 15, 2011. But, as the Colorado Supreme Court recognized in *Lowell Bros. & Talbott v. Wikstrom*, 6 P.2d 463, 464 (Colo. 1931), "[t]he transfer of a note carries with it the mortgage which secures it and all rights thereunder." As a practical matter, the formal "Assignment of Deed of Trust" on March 15, 2011, did not have any impact, adverse or otherwise, on the Hensons' obligations under the Note, and therefore any discrepancies in dates would not be "material" for purposes of Colo. Rev. Stat. § 18-5-114.

Plaintiffs further allege that they were "directly and proximately" injured by the predicate acts committed by Defendant Castle Stawiarski to the extent that foreclosure fees were improperly added to the balance of their loan, the Hensons suffered "emotional distress" and "mental anguish," and were forced to file bankruptcy "to save their home."  These injuries are not sufficient to allege a COCCA violation.  Colorado law provides that "any person injured by reason of any violation" under Colo. Rev. Stat. § 17-17-104 "shall have a cause of action for threefold actual damages sustained." *See* Colo. Rev. Stat. § 17-17-106(7).  Although a plaintiff is not required to show that he suffered injury from every predicate act alleged, "the injured by reason of" language provides "standing to a plaintiff only if that plaintiff has been injured by the conduct constituting the violation."  *Floyd v. Coors Brewing Co.*, 952 P.2d 797, 803 (Colo. App. 1997) (also noting that "because COCCA is patterned after the federal Racketeer Influenced and Corrupt Organizations Act (RICO) . . . , federal decisions construing RICO may be instructive upon similar issues arising under the state statute"), *rev'd on other grounds*, 978 P.2d 663 (Colo. 1999).

The United States Supreme Court addressed the proximate cause requirement under RICO in *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 130 S. Ct. 983, 989 (2010):

> [T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense "not only was a 'but for' cause of his injury, but was the proximate cause as well."  Proximate cause for RICO purposes . . . should be evaluated in light of its common-law foundations; proximate cause thus requires some direct relation between the injury asserted and

the injurious conduct alleged."  A link that is "too remote," "purely contingent," or "indirec[t]" is insufficient.

*Cf. Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (noting that a plaintiff's injuries must be proximately caused by the RICO violation).  Here the injuries alleged by the Hensons are too remote or indirect to support their COCCA claim.  Even assuming, for purposes of the pending motions, that assignment documents were forged, Plaintiffs' rights and obligations under the Note did not change.  As the court recognized in *Duran v. Mortgage Electronic Registration Systems, Inc.*, No. 3:12 CV 1801, 2013 WL 444450, at *5 (N.D. Ohio Feb. 5, 2013) (unpublished), "[i]f there was an irregularity in the assignment contract, only the contract rights of the original mortgage holder and the entity to which it was assigned are affected."

> If Plaintiff is in default of her loan, she is subject to foreclosure proceedings by the holder of mortgage note.  Whether that holder is MERS or Bank of America makes no difference with respect to the obligations under the mortgage contract.  [. . .]  As a consequence, Plaintiff has not suffered any injury as a result of the assignment between MERS and Bank of America . . . .

*Id.* at *6.

It is undisputed that the Hensons were several months behind on their mortgage payments when Castle Stawiarski, LLC initiated foreclosure proceedings on behalf of Bank of America.  The additional "foreclosure fees" that Plaintiffs paid and the emotional distress they experienced were, at best, an indirect consequence of the specific assignments or filings that are the subject of the charged predicate acts. The Hensons' injuries were caused not by the alleged racketeering activities, but

18

rather by their missed mortgage payments and Bank of America's decision to exercise its rights under the Note.  In the absence of any actionable injury, Plaintiffs' substantive COCCA claim fails.

Plaintiffs' conspiracy allegations will not cure the deficiencies in the First Claim. To survive a motion to dismiss, a complaint must contain more than conclusory or general allegations of conspiracy.  *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993). "A claim of conspiracy requires plaintiff demonstrate direct or circumstantial evidence of a meeting of the minds or agreement among the defendants."  *Merritt v. Hawk*, 153 F. Supp. 2d 1216, 1225 (D. Colo. 2001) (citation omitted).  "[C]onspiracy can be shown by a sequence of events from which a reasonable jury could infer there was a meeting of the minds."  *Id.*  "However, conclusory allegations that defendants acted 'in concert,' or 'conspired' without specific factual allegations to support such assertions are insufficient."  *Id.* at 1225 (quoting *Aniniba v. City of Aurora*, 994 F. Supp. 1293, 1298 (D. Colo. 1998)).  *Cf. Twombly*, 550 U.S. at 557 (noting that "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality," and "when allegations of parallel conduct are set out . . . they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action").  Plaintiffs' First Claim describes incidents that have some similarity.  However, "allegations of parallel conduct, accompanied by nothing more than a bare assertion of a conspiracy, do not plausibly suggest a conspiracy" and "fail to nudge . . . claims across the line from conceivable to plausible."

*See Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1294 (11th Cir. 2010).  *Cf.*

*Loftus v. Se. Penn. Transp. Auth.*, 843 F. Supp. 981, 987 (E.D. Pa. 1994) (noting that

"parallel but independent action by actors does not import conspiracy").

More to the point, Plaintiffs' conspiracy allegations under § 18-17-104(4) cannot

survive the deficiencies in their substantive COCCA claim.  A COCCA conspiracy claim

requires that the plaintiff first allege an independent violation of § 18-17-104(1), (2), or

(3).  If the Hensons have no viable claim under § 18-17-104(3), then their conspiracy

claim must fail as a matter of law.  *Cf. Tal v. Hogan*, 45 F.3d at 1270; *Jensen v.*

*America's Wholesale Lender*, No. 1:09-CV-169, 2010 WL 2720745, at *3 (D. Utah,

July 8, 2010) (unpublished).

**B.   PLAINTIFFS' SECOND CLAIM – CCPA**

In their Second Claim for Relief, the Hensons allege violations of the CCPA,

Colo. Rev. Stat. §§ 6-1-101, *et seq.*  More specifically, Plaintiffs contend that

Defendants Bank of America and Castle Stawiarski made a false representation in

connection with foreclosure proceedings relating to the Hensons' residence in violation

of Colo. Rev. Stat. § 6-1-501, and improperly disclosed the Hensons' social security

numbers in connection with a September 10, 2010 Motion for Order Authorizing Sale,

in violation of Colo. Rev. Stat. § 6-1-715.

"To prove a private cause of action under the CCPA, a plaintiff must show:

(1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the

challenged practice occurred in the course of defendant's business . . . ; (3) that it

significantly impacts the public as actual or potential consumers of the defendant's

goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally

protected interest; and (5) that the challenged practice caused the plaintiff's injury."

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 147 (Colo.

2003).  If all elements of a CCPA claim are not met, the claim fails as a matter of law.

*HealthONE of Denver, Inc. v. UnitedHealth Group, Inc.*, 805 F. Supp. 2d 1115, 1120

(D. Colo. 2011).  A deceptive trade practice under Colo. Rev. Stat. § 6-1-105 requires

a showing that the defendant knowingly made a false representation that either

"induce[d] a party to act, refrain from acting, or ha[d] the capacity or tendency to

attract consumers."  *Id.*  "A CCPA claim arises when a party knowingly makes a

misrepresentation or makes a false representation that has the capacity to deceive."  *Id.*

Beyond alleging a deceptive trade practice, a plaintiff asserting a CCPA claim

must also allege facts that plausibly suggest that "the defendant's challenged practice

significantly impacts the public as actual or potential consumers of the defendant's

goods, services or property."  *Id.* at 149 (citing *Hall v. Walter*, 969 P.2d 224, 234 (Colo.

1998)).  "Thus, if a wrong is private in nature, and does not affect the public, a claim

is not actionable under the CCPA."  *Id.* at 149.  If one element of a CCPA claim is not

met, the entire claim fails.  *See Coors v. Sec. Life of Denver Ins. Co.*, 91 P.3d 393, 399

(Colo. App. 2003) (stating that since element three of the CCPA claim could not be

proven as a matter of law, the court would leave for another day the issue of whether

the plaintiff had established element one of the CCPA), *rev'd in part on other grounds*, 112 P.3d 59 (Colo. 2005).

The CCPA is not intended to provide additional remedies to claimants whose disputes have no public impact but are, instead, purely private transactions. *Rhino Linings USA*, 62 P.3d at 150.  Considerations relevant to whether a challenged practice significantly impacts the public include: "(1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Id.* at 149.

Plaintiffs have not pled facts that would plausibly demonstrate that their transaction with Defendant Bank of America, and the involvement of Defendant Castle Stawiarski, had any public impact.  This was a private transaction involving the Hensons' personal residence.  Plaintiffs' suggestion, "on information and belief," that Bank of America and Castle Stawiarksi "routinely pursue foreclosure actions without being a holder of an evidence of debt or posting a bond," is nothing more than a conclusory statement that falls short of the pleading requirements enunciated in *Twombly* and *Iqbal.*  More to the point, that assertion is belied by the facts in Plaintiffs' own case.

Plaintiffs also attempt to infer a "public impact" by citing a recent lawsuit brought by the United States and 49 State Attorneys General.  (*See* Doc. # 29 at 119.)  On

22

careful reading, however, the complaint in that case refers to all of the defendant financial institutions collectively as "the Banks" and contains only one particularized reference to Bank of America.[7]  (*See* Doc. # 40-2 at 31-48.)  The Hensons cannot sustain their pleading obligations in this case by referencing another complaint that shares many of the same shortcomings under Fed. R. Civ. P. 8.  As such, Plaintiffs' CCPA claim will be dismissed.

## C.      PLAINTIFFS' THIRD CLAIM – COLO. REV. STAT. § 38-40-104

Under Colorado law, the servicer of a mortgage loan is required to "respond in writing within twenty days from the receipt of a written request from the debtor . . . for information concerning the debtor's loan, which is readily available to the servicer from its books and records . . . ."  Colo. Rev. Stat. § 38-40-103(2).  A debtor aggrieved by a violation of § 38-40-103 may bring an action for actual damages and statutory damages of $1,000.00, plus reasonable attorney fees and costs, if the "violation is not remedied in a reasonable, timely and good faith manner by the party obligated to do so, and after a good faith effort to resolve the dispute is made by the debtor."  Colo. Rev. Stat. § 38-40-104.  In their Third Claim, the Hensons allege that Bank of America failed to respond in a proper or timely manner to their letter of November 5, 2010, and that they suffered

---

[7]   This specific paragraph alleges that "BOA has submitted claims for payment to the FHA with respect to FHA-insured mortgage loans originated and underwritten by Countrywide in contravention of HUD regulations and the requirements of the Direct Endorsement Programs during the period 2003 through April 30, 2009."  The Hensons' loan originated with Ryland Mortgage Company.

actual damages "in the form of emotional distress, certified mail postage, transportation costs, copying fees, [and] inconvenience."

Defendant argues in response that it notified the Hensons on December 7, 2010, that it would need more time to respond to their requests. (*See* Doc. # 34-1 at 35.) While Bank of America concedes that it did not provide the requested information within the twenty-day period contemplated by § 38-40-103(2), Defendant argues that its more comprehensive response on January 14, 2011, constituted a "reasonable, timely and good faith" remedy. Bank of America also notes that the January 14, 2011 letter invited the Hensons to "contact BAC Home Loans' FREM Customer Escalation Team at (866) 200-9624" if they had "further concerns or questions regarding this matter." (*See* Doc. # 34-1 at 37.) Defendant contends that the Hensons thereafter failed to make a "good faith effort to resolve the dispute," choosing instead to send a string of letters that raised new demands.

For purposes of the pending motion, the court must construe the allegations in the light most favorable to Plaintiffs. On the current record, the court cannot conclude as a matter of law that the Hensons would be unable to prevail on this claim. Whether Bank of America acted reasonably and in food faith by sending its letters on December 7, 2010, and January 14, 2011, and whether the Hensons made a "good faith effort to resolve the dispute" short of litigation, are issues better resolved on summary judgment or at trial.

**D.    PLAINTIFFS' FOURTH, SIXTH, SEVENTH, TENTH, ELEVENTH, and TWELFTH CLAIMS – RESPA**

The Hensons contend that Defendant Bank of America violated RESPA by failing to respond properly to "qualified written requests" (QWRs) submitted on January 11, 2011 [fourth claim], and February 17, 2011 [sixth and seventh claims], and by failing to acknowledge the QWRs sent on March 30, 2011 [tenth claim], March 13, 2011 [eleventh claim], and April 19, 2011 [twelfth claim].  Bank of America argues, in moving to dismiss, that it responded reasonably to the January and February letters and properly acknowledged the letters sent in March and April.  Moreover, Defendant Bank of America contends that Plaintiffs have not alleged any actual injury suffered by the Hensons as a result of the purported RESPA violations.

The purpose of RESPA is to make sure that consumers receive information regarding the nature, settlement costs, and servicing of home loans.  12 U.S.C. § 2601(a).  If a loan servicer receives a QWR from the borrower seeking information relating to the servicing of a loan, the servicer must provide a written response acknowledging the correspondence within 20 days.  12 U.S.C. § 2605(e)(1)(A).  "Within sixty days of receipt of a QWR, the loan servicer generally must investigate and make appropriate corrections to the borrower's account, provide a written notification of any correction or an explanation why no correction was necessary, and provide a contact number for a representative."  *Berneike v. CitiMortgage, Inc.*, --- F.3d ----, 2013 WL 657032, at *2 (10th Cir. 2013).  *See also* 12 U.S.C. § 2605(e)(2).  "If the lender fails to comply with a QWR, the borrower is entitled to any actual damages [caused by] the

25

failure; and . . . any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000." *Albury v. Am. West Bank*, No. 1:10-CV-197 TS, 2011 WL 902617, at *2 (D. Utah Mar. 15, 2011) (unpublished) (citing 12 U.S.C. § 2605(f)(1)) (internal quotations omitted).

To trigger a servicer's duty to respond, a qualified written request must "include[], or otherwise enable[] the servicer to identify, the name and account of the borrower" and "include[] a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provide sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). Furthermore, "a letter cannot be 'qualified' under the statute if it does not relate to the servicing of the account." *Harris v. Am. Gen. Fin., Inc.*, No. Civ.A. 02-1395, 2005 WL 1593673, at *3 (D. Kan. July 6, 2005) (unpublished).  The statute defines "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).  Queries that essentially call for, or dispute, an interpretation of the underlying loan agreement do not constitute a qualified written request.  *Banayan v. OneWest Bank, F.S.B.*, No. 11cv0092, 2012 WL 896206, at *5 (S.D. Cal. Mar. 14, 2012) (unpublished).

The Fourth and Seventh Claims allege that Bank of America failed to disclose,

*inter alia*, the name, address, and telephone number of the owner of their mortgage

loan; the name, address, and telephone number of the entity currently in possession

of their original promissory note; and the recipients of any attorney fees, property

inspection fees, and/or property preservation fees added to the balance of their loan,

in response to the Hensons' "qualified written requests" of January 11 and February 17,

2011.  *But see, e.g.*, *Michel v. Deutsche Bank Trust Co.*, No. 1:10-CV-2375, 2012 WL

4363720, at *10 (E.D. Cal. Sept. 20, 2012) (unpublished) (the identity of the holder

of the subject loan does not relate to loan servicing); *Schwartz v. Bank of Am., N.A.*,

No. 10-cv-01225, 2011 WL 1135001, at *6 (D. Colo. Mar. 28, 2011) (unpublished)

(holding that the plaintiff had failed to state a claim for relief under RESPA where the

plaintiff's written correspondence requested information that exceeded the scope of a

proper QWR).  The January 11 and February 17, 2011 letters did request information

regarding the servicing of the Hensons' loan (*e.g.*, a loan history report, a payoff quote,

and the date that BAC Home Loans Servicing, L.P. took over servicing their loan).

However, to the extent that Plaintiffs' RESPA claims are predicated on requests that

are not directed to the "servicing" of their loan, those portions of their RESPA claims

must be dismissed.

As to Plaintiffs' allegations that Bank of America failed to acknowledge receipt of

their March and April letters in a timely manner (Claims Six, Ten, Eleven, and Twelve),

Defendant has proffered letters dated April 14, April 22, and May 11, 2011, that it

contends were sent within the statutorily-mandated 20 days of receipt of a QWR. (*See* Exhibits 14, 15, and 16 attached to Defendant Bank of America's Motion to Dismiss.)  The Hensons maintain that these particular letters actually were belated acknowledgments of earlier QWRs and then argue that this dispute of fact precludes dismissal under Rule 12(b)(6).  *But see Phillips v. Bank of Am. Corp.*, No. 5:10-CV-04561, 2011 WL 4844274, at *3 (N.D. Cal. Oct. 11, 2011) (unpublished) ("the court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit" (internal quotation marks and citation omitted)).  Unfortunately, the letters proffered by Bank of America do not reference, by date or other identifying information, a particular inquiry from the Hensons or specify when the Hensons' letter was received.  To the extent that Bank of America's processing procedures create some ambiguity in the context of the pending motion, any adverse consequences should not fall on the Hensons.

Plaintiffs also must allege facts that plausibly demonstrate they sustained actual damages proximately caused by the alleged RESPA violations, or that the alleged conduct was part of "a pattern or practice of noncompliance" with RESPA by Bank of America.  To recover actual damages pursuant to § 2605(f)(1)(A), the Hensons must adequately plead a causal link between their claimed damages and the specific RESPA violation committed by Bank of America.  *Kapsis v. Am. Home Mortg. Servicing Inc.*, --- F. Supp. 2d. ----, 2013 WL 544010, at *13 (E.D.N.Y. Feb. 14, 2013) (to survive a motion to dismiss, a RESPA claim "must contain 'factual allegation[s] suggesting that any

damages [plaintiff] suffered were proximately caused by [defendant's] violation of § 2605'" (citation omitted)).  *Cf. Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) (§ 2605(f)(1)(A) only permits recovery of "actual damages" to the borrower that "result" from the failure to comply with RESPA requirements); *In re Tomasevic*, 273 B.R. 682, 688 (M.D. Fla. 2002) (while suggesting that the cost of photocopies and postage may constitute "actual damages," those costs must flow from the defendant's failure to properly respond to the QWR).

Unfortunately, the nature and extent of the Hensons' RESPA damages is far from clear.  The Fourth Claim apparently does not seek actual damages, but only statutory damages based on Bank of America's alleged "pattern, practice, or custom of violating RESPA."  (*See* Doc. # 29, ¶ 146.)  However, Plaintiffs have not alleged any facts that would plausibly support that conclusory statement.  Certainly, the Hensons cannot predicate a claim for statutory damages based on their first QWR.  The Sixth, Seventh, Tenth, Eleventh, and Twelfth Claims also seek statutory damages without any proof of a "pattern, practice or custom."  *Cf. Givant v. Vitek Real Estate Indus. Grp., Inc.*, No. 2:11-cv-03158, 2012 WL 5838934, at *4 (E.D. Cal. Nov. 15, 2012) (unpublished) (holding that a plaintiff "seeking statutory damages 'cannot rely simply on stock conclusions, but must allege facts that are sufficient to raise a right to relief above the speculative level'" (citation omitted)).

Plaintiffs also seek actual damages in the Sixth, Seventh, Tenth, Eleventh, and Twelfth Claims.  The Sixth and Tenth Claims seek "actual damages" for  postage,

copying, transportation, and "inconvenience."  (*See* Doc. # 29, ¶¶ 161 and 185.)  The Seventh, Eleventh, and Twelfth Claims simply refer to "actual damages," without further explanation or description.

Adding to the confusion, during the November 8, 2012 hearing before Magistrate Judge Shaffer, Plaintiffs' counsel advised that his clients are claiming non-economic damages with respect to all of their RESPA claims to the extent they experienced "inconvenience and frustration" in writing successive letters over the course of three months.  (*See* Doc. # 67 at 76.)  The RESPA claims do not reference these non-economic damages.  In fact, the only reference to "emotional distress or upset or mental anguish" appears in the First Claim and the description of predicate acts (which do not include the alleged RESPA violations).  (*See* Doc. # 29 at 104 and 106.)  There are no facts alleged in the Second Amended Complaint that would plausibly suggest that Plaintiffs' emotional distress is causally connected to Bank of America's responses to their QWRs.  *Cf. Skaggs v. HSBC Bank USA, N.A.*, No. 10-00247, 2011 WL 3861373, at *16 (D. Haw. Aug. 31, 2011) (unpublished) (holding that plaintiff had not properly alleged actual damages under RESPA where her "distress was not a result of a failure to give 'servicing information' – instead it was a result of 'not being able to get a straight answer as to who was the owner of the mortgage,' which is information not required under RESPA").

While the Hensons' RESPA claims contain a number of pleading deficiencies, it would be premature to conclude on this record that Plaintiffs cannot cure those

shortcomings in an amended pleading.  Therefore, Plaintiffs' REPSA claims are

dismissed without prejudice and with leave to amend in conformity with this Order.

### E.    PLAINTIFFS' FIFTH, EIGHTH, AND NINTH CLAIMS – TILA

In their Fifth, Eighth, and Ninth Claims, Plaintiffs allege violations of the Truth in

Lending Act (TILA), 15 U.S.C. §§ 1641(f) and 1641(g), claiming that Defendant Bank of

America failed to identify the current owner of their loan, despite repeated requests, or

failed to provide timely notice that a new creditor had acquired ownership of their loan.[8]

Plaintiffs' counsel concedes that his clients suffered no actual damages as result of

these alleged TILA violations (*see* Doc. # 67 at 84), but the Hensons seek statutory

damages of $4,000.00 for each claim, together with legal fees and costs.

Defendant Bank of America persuasively argues that the TILA claims must be

dismissed for failure to state a claim because Bank of America did not originate the

loan and cannot be held liable as an assignee.  *See Chow v. Aegis Mortg. Corp.*, 286

F. Supp. 2d 956, 959 (N.D. Ill. 2003) (holding that the only parties who can be liable for

TILA violations are the original creditor and assignees of that creditor; "servicers of

consumer obligations are not to be treated as assignees for purposes of imposing

liability unless they are also the owner of the obligation").  As the court noted in

*McDaniel v. Denver Lending Group, Inc.*, No. 08-cv-02617, 2009 WL 1873581, at *14

(D. Colo. June 30, 2009) (unpublished), "TILA expressly disclaims any liability of loan

---

[8]   Plaintiffs also appear to assert a TILA violation in their Twelfth Claim which purports to be brought under RESPA.  (*See* Doc. # 29, ¶¶ 199-203.)

servicers" and "recognizes that loan servicers do not become subject to its terms on the

basis of assignment."  *See also* 15 U.S.C. § 1602(f) (under TILA, a "creditor" is defined

as a person who regularly extends consumer credit and "is the person to whom the debt

arising from the consumer credit transaction is initially payable on the face of evidence

of indebtedness").  While Bank of America's "creditor" status in the Hensons' bankruptcy

proceeding reflected "a claim against the debtor that arose at the time of or before the

order for relief concerning the debtor," *see* 11 U.S.C. § 101(10)(A), the filing of

Defendant's proof of claim did not qualify Bank of America as a "creditor" for purposes

of TILA.  As such, Plaintiffs' TILA claims must be dismissed.

### III. <u>CONCLUSION</u>

For the foregoing reasons, it is ORDERED that:

1.     Defendant Castle Stawiarksi LLC's Motion to Dismiss (Doc. # 43) is GRANTED

and all claims against Defendant Castle Stawiarksi LLC are DISMISSED WITH

PREJUDICE;

2.     Defendant Bank of America, N.A.'s Motion to Dismiss (Doc. # 34) is GRANTED

IN PART and DENIED IN PART as follows:

a)     The Motion to Dismiss is granted to the extent that Claims One, Two, Five,

Eight, and Nine are DISMISSED WITH PREJUDICE;

b)     The Motion to Dismiss is granted to the extent that Claims Four, Six,

Seven, Ten, Eleven, and Twelve are DISMISSED WITHOUT

PREJUDICE; and

c)      The Motion to Dismiss is denied to the extent that it relates to Claim

Three brought pursuant to Colo. Rev. Stat. § 38-40-104.

3.      Should Plaintiffs wish to amend their complaint with respect to those claims that

were dismissed without prejudice, they shall file such an amended complaint by

no later than April 22, 2013.

DATED:  March   25  , 2013

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge